UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANTHONY FALSO,

                        Plaintiff,

                                                                                           DECISION AND ORDER

                                                                                         06-CV-6412L

          v.

SALZMAN GROUP, INC.,

                        Defendant.
_____

**Introduction**

      Plaintiff Anthony Falso ("Falso"), proceeding *pro se*, brings this action alleging that defendant Salzman Group, Inc. ("Salzman"), discriminated against him with respect to his employment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 et seq.

      Falso alleges that he has a learning disability and obsessive compulsive disorder ("OCD"). On or about August 23, 2005, Falso was hired by Salzman as a customer service representative. Falso claims that after his Job Coach advised his supervisors that he had a learning disability, his employment was terminated on August 29, 2005. Salzman contends that Falso's termination was solely the result of complaints by a female employee who was training

Falso, that Falso had been touching himself inappropriately in her presence for the apparent purpose of sexual gratification.

On or about October 25, 2005, Falso filed a discrimination complaint against Salzman with the New York State Division of Human Rights ("NYSDHR"), alleging that he had been discriminated against on the basis of his learning disability.[1]  After investigating Falso's claims, on May 31, 2006, the NYSDHR issued a "no cause" finding and dismissed Falso's complaint, noting that there was no evidence to substantiate any of his allegations.  Those findings were adopted by the Equal Employment Opportunity Commission ("EEOC") on August 10, 2006.

Five days later, Falso initiated the instant action, purporting to assert claims under Title VII and the ADA against Salzman.  Salzman now moves for summary judgment dismissing the Complaint pursuant to Fed. R. Civ. Proc. 56, on the grounds that Falso has failed to establish a *prima facie* case of discrimination, and/or cannot rebut Salzman's legitimate, nondiscriminatory reason for terminating his employment.  For the reasons set forth below, Salzman's motion to dismiss (Dkt. #28) is granted, and the Complaint is dismissed.

## Discussion

**I.      Summary Judgment in Discrimination Cases**

Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

---

[1] The administrative charge was made against the specific Salzman-owned internet business for which Falso was hired to serve as a customer service representative, a coffee machine and equipment vendor called "Whole Latte Love."

law." Fed. R. Civ. P. 56(c). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Although courts should be cautious about granting summary judgment in cases where motive, intent or state of mind are at issue, a common component of discrimination actions, *see Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988); *Montana v. First Federal Savings and Loan Ass'n of Rochester*, 869 F.2d 100, 103 (2d Cir.1989), "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to... other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985) (summary judgment rule would be rendered sterile if mere incantation of intent or state of mind would act as a talisman to defeat an otherwise valid motion). *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000), *quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993) (trial courts should not "treat discrimination differently from other ultimate questions of fact").

Where, as here, the party opposing summary judgment is proceeding *pro se*, the Court must "read the pleadings ... liberally and interpret them to raise the strongest arguments that they suggest." *Corcoran v. New York Power Auth.*, 202 F.3d 530, 536 (2d Cir.1999). Nevertheless, "proceeding *pro se* does not otherwise relieve [the opposing party] from the usual requirements of summary judgment." *Fitzpatrick v. N.Y. Cornell Hosp.*, 2002 U.S. Dist. LEXIS 25166 at *5 (S.D.N.Y. 2003).

Falso's claims of employment discrimination are subject to the burden-shifting analysis first articulated in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, Falso must establish a *prima facie* case of discrimination by demonstrating: (1) membership in a protected

class; (2) satisfactory job performance, with or without reasonable accommodations in the case of an ADA-qualifying disability; and (3) an adverse employment action, occurring under (4) circumstances giving rise to an inference of discrimination.  *See Collins v. New York City Transit Authority*, 305 F.3d 113, 118 (2d Cir. 2002); *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 870 (2d Cir. 1998).  Once Falso has established a *prima facie* case, the burden shifts to Salzman to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  *See James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000).  The burden then returns to Falso, to supply evidence that the legitimate, nondiscriminatory reason offered by the defendant is a pretext.  *See St. Mary's Honor Center*, 509 U.S. 502 at 508.

While granting Falso the liberal interpretation and favorable inferences due to him as a *pro se* plaintiff and as a nonmovant, I find that he has nonetheless failed to establish a *prima facie* case of discrimination, and/or to rebut Salzman's legitimate, nondiscriminatory reason for terminating his employment.

**II.     Falso's Title VII Claim**

Although Falso does not identify himself as part of a protected group, he alleges that Salzman subjected him to unlawful discrimination in violation of Title VII.  Falso's administrative charge makes no reference whatsoever to discrimination on the basis of race, color, religion, sex or national origin.  It does not appear that the NYSDHR or EEOC ever investigated such claims, and I find that Falso's unspecified claim of discrimination under Title VII bears no "reasonable relationship" to the allegations contained in his NYSDHR complaint.

Accordingly, Falso has failed to exhaust his administrative remedies with respect to his Title VII claim, and it must be dismissed.  *See Hawkins v. Wegmans Food Market*, 2007 U.S. App. LEXIS 12014 at *3 (2d Cir. 2007) (unexhausted race and age discrimination claims are not "reasonably related" to gender and disability discrimination claims recited in plaintiff's EEOC filing, and therefore must be dismissed), *citing Williams v. New York City Housing Auth.*, 458 F.3d 67, 70 (2d Cir. 2006).

### III. Falso's Discriminatory Discharge Claim Pursuant to the ADA

Title I of the ADA prohibits employers from discriminating against any "qualified individual with a disability because of the disability of such individual in regard to" any aspect of employment.  42 U.S.C. §12112(a).  A plaintiff asserting a violation of the ADA must show that: (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability.  *See Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001).  For purposes of the ADA, a disabled individual is one who: "(i)  has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment."  42 U.S.C. §12102(2).  An impairment cannot be demonstrated merely through evidence of a medical diagnoses; rather, the ADA "requires those claiming the Act's protection . . . to prove a disability by offering evidence

that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002).

While generally alleging that he has an unspecified "learning disability" and OCD and that Salzman was aware of both conditions, Falso does not describe any impairment which substantially limits one or more major life activities, supply records of such an impairment, or adduce any evidence whatsoever that Salzman regarded him as having such an impairment.[2] To the contrary, while Falso submits copies of various medical records diagnosing him with learning, social, and mild physical disabilities, including an expressive language disorder which makes it more difficult for Falso to present material in oral form, social awkwardness, depression, some repetitive obsessive compulsive behaviors, and difficulty with fine motor coordination, Falso does not allege, nor the records catalogue, any substantial limitations concerning a major life activity. On this basis alone, Falso's claim must be dismissed.

Moreover, even if Falso had established that he has a learning disability which substantially limits one or more life activities, or that Salzman regarded him as having such an impairment, and that he was "otherwise qualified" to perform the requirements of his position with or without a reasonable accommodation, Falso cannot rebut Salzman's legitimate, nondiscriminatory reason for terminating his employment.

---

[2] Falso claims that his Job Coach informed a Salzman supervisor that Falso had "a learning disability [that] might affect [his] ability to perform the duties of [his] job." This statement is pure hearsay, and as such, cannot defeat summary judgment. *See Tokio Marine and Fire Ins. Co. v. Rosner*, 2006 U.S. App. LEXIS 29207 at *11 (2d Cir. 2006). Furthermore, even assuming that Salzman was informed of Falso's alleged disability, Falso has nonetheless failed, as discussed above, to rebut Salzman's legitimate, nondiscriminatory reason for terminating his employment.

It is undisputed that at some point during Falso's six-day tenure with Salzman, the veteran female customer service representative who was responsible for training Falso, Rosalyn Arguello ("Arguello"), informed her supervisor that Falso was behaving in an inappropriate and unprofessional manner. Specifically, Arguello complained that Falso was placing his hands in and around his groin area, in a manner that appeared to be calculated for the purpose of sexual gratification, and that she did not feel she could continue working with him. The supervisor reported the complaint to Salzman's Director of Commercial Sales, Mark Jackson ("Jackson"), who interviewed Arguello and found her complaint to be credible. As a result, Jackson attests that he decided to terminate Falso's employment, and advised Falso on August 29, 2005 of his immediate termination.

Falso does not deny Arguello's account of his conduct, but testified that he became nervous due to the "inappropriate" clothing of some of the female employees which "revealed various part [sic] of their anatomy," and that he "involuntarily" reacted by making "irregular" movements with his hands in and around his waist, including inserting his hands inside his pants to adjust his clothing, as a means of obtaining "relief" from the stress. While Falso speculates that these "movements" may have been triggered by a nervous reaction which exacerbated his OCD – a suggestion which is unsupported by Falso's medical records, which make no cognizable reference to such behavior – whether they were caused by his alleged disability is irrelevant to the question of whether Salzman's termination of Falso's employment was legitimate. Disruptive and inappropriate behavior is a legitimate nondiscriminatory reason for termination, and an employer's termination of an employee for such behavior does not violate the ADA, even

where the misconduct was occasioned by the employee's alleged disability. *See e.g.*, *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 171 (2d Cir. 2006)(threat made by severely depressed employee that he would harm his supervisor is a legitimate, nondiscriminatory reason for terminating his employment, where there is no evidence that non-disabled employees wouldn't be terminated for the same conduct); *Valentine v. Standard & Poor's*, 50 F. Supp. 2d 262, 289 (S.D.N.Y. 1999)(collecting, discussing and following cases which hold that "the ADA does not immunize disabled employees from discipline or discharge for incidents of misconduct in the workplace").

Falso has conceded essentially to engaging in the conduct for which he was terminated, and there is no evidence that Salzman's legitimate, nondiscriminatory reason for discharging Falso – specifically, Falso's inappropriate and repeated touching of his groin area in front of female employees – was a pretext for unlawful discrimination based on Falso's disability. Accordingly, Falso's discrimination claim based on his alleged disability must be dismissed.

**IV.**    **Falso's Harassment Claim**

Finally, Falso alleges that he was subjected to a hostile work environment because of his disability. In order to prevail on a claim that unlawful harassment has caused a hostile work environment, a plaintiff must demonstrate that the workplace was permeated with "discriminatory intimidation, ridicule, and insult... sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and show a specific basis for imputing the conduct that created the hostile work environment to the

employer. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). *See also Mack v. Otis Elevator Co.*, 326 F.3d 116, 122 (2d Cir. 2003); *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002).

In determining whether conduct constitutes a hostile work environment, the Court considers the frequency and severity of the discriminatory conduct, whether the conduct is physically threatening or humiliating, and whether the conduct unreasonably interferes with the plaintiff's work performance. *See Winnie v. City of Buffalo*, 2003 U.S. Dist. LEXIS 1497 at *14-*15 (W.D.N.Y. 2003), *citing Harris*, 510 U.S. at 23. *See also Kotcher v. Rosa & Sullivan Appliance Ctr.*, 957 F.2d 59, 62 (2d Cir. 1992) (incidents must be repeated and continuous; isolated acts or occasional episodes will not merit relief").

In his complaint, Falso alleges that he was subjected to "bullying, demeaning action" by Salzman. However, Falso does not specify, either in his complaint or in his response to the instant motion, any harassing comments or conduct by anyone at Salzman, nor does the record contain any evidence that Salzman subjected Falso to ridicule, insult, or any physically threatening or humiliating conduct. As such, Falso's harassment claim must be dismissed.

## Conclusion

For the foregoing reasons, I find that Falso has failed to exhaust his administrative remedies with respect to his Title VII claim, establish a *prima facie* case of ADA-based discrimination or harassment, and/or rebut Salzman's legitimate, nondiscriminatory reasons for

terminating his employment.  Accordingly, Salzman's motion to dismiss Falso's claims (Dkt. #28) is granted, and the complaint is dismissed, with prejudice.

    IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      April 10, 2008.